92 F.3d 1188
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marcus MILLENDER, Defendant-Appellant.
 No. 96-1186.
 United States Court of Appeals, Seventh Circuit.
 Argued June 6, 1996.
Decided July 31, 1996.
 
 Before BAUER, ROVNER and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Marcus Millender, who pled guilty to charges of possession with intent to distribute cocaine base, using a firearm in relation to a drug offense, and establishing a drug manufacturing operation, appeals the district court's denial of his motion to suppress evidence obtained during two searches of his home. He argues that the first was conducted without his consent and in the absence of exigent circumstances, and that the second followed from consent that was involuntarily given. We affirm.
 
 I.
 
 2
 Before denying Millender's motion, the district court conducted an evidentiary hearing, which included testimony from police officer Byron Bishop, who conducted the initial search of Millender's home. Bishop testified that he arrived at Millender's home after responding to a call from Tomika Roddy, who claimed that she had been battered by Millender. When Bishop arrived at the hotel where Roddy was staying, her shirt was torn; she told Bishop that Millender had grabbed her shirt and hit her. Roddy told Bishop that she wished to sign a complaint and press charges against Millender and asked that Bishop accompany her to Millender's apartment to retrieve her belongings.
 
 
 3
 When the two arrived, they met Millender on the front lawn, and, according to Bishop, asked for permission to enter the apartment to remove Roddy's possessions. Bishop testified that Millender responded by saying "why don't ya'll come on i[n]" (June 22, 1995 Tr. at I-36), while the three were still outside of the building. Bishop also related that after the three had entered the lobby of the building but before they had entered Millender's apartment, Bishop again asked for permission to enter and Roddy granted it. Roddy unlocked the apartment and led them in. Bishop stood by the door of the apartment while Roddy retrieved her belongings, and while doing so observed Millender place something in his pocket. Roddy and Millender continued to argue as she collected her things.
 
 
 4
 After Roddy finished collecting her belongings, Bishop told Millender that he was under arrest for battery. He moved over to Millender, and then handcuffed and patted him down, asking him to ease his hands out of his pocket. Bishop removed a round "rock" from Millender's pocket, which he thought to be crack cocaine. From his new vantage point he also noticed a scale and a plate containing a white powdery substance in plain view. After arriving at the police station Millender gave written consent for the police to conduct a search of his apartment. That search revealed further items that supported the drug charges against him.
 
 
 5
 Contradicting Bishop's testimony, Roddy testified that Millender had not invited her or Bishop into the home, and denied that there had been any conversation between Bishop and Millender prior to the entry. Millender, who also testified, partially corroborated Bishop's account by acknowledging that he and Millender had indeed conversed. Millender denied, however, that he had consented to Bishop's presence, claiming that he had entered the apartment alone and closed the door.
 
 II.
 
 6
 Our review of the district court's probable cause determination is de novo. Ornelas v. United States, 116 S.Ct. 1657, 1659 (1996); United States v. Cotnam, 1996 WL 379787 at * 6 (7th Cir. July 8, 1996). However, we defer to the district court on matters of credibility, in light of its greater opportunity to observe the demeanor of the witnesses. United States v. McGuire, 957 F.2d 310, 314 (7th Cir.1992).
 
 
 7
 The first question presented here is whether Bishop was lawfully in Millender's home. On that issue, the district court found Bishop to be the most credible witness, and chose to credit his testimony over that of Millender and Roddy. The court found Roddy's testimony to be placed in doubt by the fact that she maintained her personal relationship with Millender, and had visited him twelve times during his pretrial incarceration. The court also noted inconsistencies between the testimony of Millender and Roddy. The court's decision to credit Bishop's testimony was not an abuse of its discretion. In light of the evidence that Millender invited Bishop into his home, we find that his presence there was consensual and not in violation of the Fourth Amendment.
 
 
 8
 The second issue, also easily settled, is whether Bishop's arrest of Millender was supported by probable cause. Bishop was called on a complaint of domestic battery by Roddy. When he arrived, Roddy was in a hotel room and was wearing a torn shirt. She took Bishop to Millender's apartment, which did indeed contain her possessions, and Roddy and Bishop continued to argue as she collected her belongings. In light of these circumstances, Bishop had probable cause to believe that Millender had committed the battery and to arrest him. See Hebron v. Touhy, 18 F.3d 421, 422 (7th Cir.1994) (complaints from crime victims are ordinarily sufficient to establish probable cause); Simmons v. Pryor, 26 F.3d 650, 654-55 (7th Cir.1993), cert. denied, 114 S.Ct. 1833 (1994) (complaint of battery from domestic violence victim who had previously obtained an order of protection and who wished to file a criminal complaint was sufficient to establish probable cause).
 
 
 9
 Having found that the arrest was supported by probable cause, the pat-down search that ensued was also legal incident to that arrest. See United States v. Ortiz, 84 F.3d 977, 983-84 (7th Cir.1996); United States v. Mitchell, 64 F.3d 1105, 1110 (7th Cir.1995), cert. denied, 116 S.Ct. 1549 (1996).
 
 
 10
 Millender's second argument rests on his first. He contends that the consent he later gave for a search of his apartment was not voluntary because it followed from the illegal discovery of crack cocaine in his pocket. He argues that he would not have consented to the search if not for that discovery. Having found that Bishop's presence in Millender's apartment, his arrest of Millender, and the pat-down search that ensued were all legal, Millender's second argument must fail as well.
 
 
 11
 The district court's denial of Millender's motion to suppress was proper, and Millender's conviction is AFFIRMED.